IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **HYPERHEAL HYPERBARICS, INC.** | * | |
| Plaintiff | * | |
| v. | * | Case No. 1:18-cv-01679-RDB |
| **ERIC SHAPIRO** | * | |
| | * | |
| Defendant | | |

\* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED COMPLAINT

Plaintiff Hyperheal Hyperbarics, Inc., by its attorneys, Stephen H. Kaufman, Donald J. Walsh, Marc A. Campsen, and Wright, Constable and Skeen, LLP, hereby files this Verified Complaint against Defendant Eric Shapiro, and for cause states:

## PARTIES

1. Plaintiff, Hyperheal Hyperbarics, Inc. ("Hyperheal"), is a corporation organized under the laws of Maryland with a principal place of business in Baltimore County, Maryland.

2. Defendant Eric Shapiro ("Shapiro") is an individual who is a citizen of the State of Maryland and resides in Baltimore County, Maryland.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Defendant because he is domiciled in the State of Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-102(a). Jurisdiction is further supported because several of the causes of action herein this Amended Complaint arise under the laws of the United States. *See* 28 USC §§1331 and 1338.

4. Venue is proper in this Court because Defendant resides in Baltimore County, Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-201(a).

# FACTS

**A.    Hyperheal**

5.    On May 25, 2007, Shapiro formed Hyperheal Hyperbarics, LLC to provide hyperbaric oxygen therapy ("HBOT").  MD SDAT Business search attached as **Exhibit 1**.

6.    HBOT is administered as a treatment for a wide variety of medical conditions and prescribed as part of an overall medical care plan.  Federal law and regulations require that only a licensed physician can prescribe HBOT in a medical care plan.  HBOT treatments must be supervised by a licensed physician but can be administered by a certified technician.

7.    As of on or about October 2, 2009, Hyperheal Hyperbarics, LLC's corporate status was forfeited.  *See id*.

8.    On July 12, 2012, Shapiro formed Hyperheal. MD SDAT Business search attached as **Exhibit 2**.  Shapiro was one of three directors and the majority owner.  *Id*. At the time, Shapiro controlled the day-to-day operations of Hyperheal. Since then, Hyperheal has owned, managed and operated medical freestanding facilities that provide HBOT.

9.    In furtherance of its business operations and marketing efforts, Hyperheal created and operates the website Hyperhealhyperbarics.com.[1]  While operating Hyperheal, Shapiro also registered various other domain names on behalf of Hyperheal with GoDaddy.com including Hyperheal.org, Hypherheal.info, Hyperheal.biz, Hyperheal.net, Hyperheal.us, Hyperheal.online, Hyperheal.co, and Hyperheal.mobi ("Hyperheal Domain Names"). The purpose of registering domain names other than the primary website address is to capture all variations of the primary website address that potential customers may search for online and automatically direct that

---

[1] *See* https://hyperhealhyperbarics.com/

individual to the Hyperhealhyperbarics.com website. Shapiro paid the registration fees for the Hyperheal Domain Names through June 2018.

10.  Hyperheal also created a LinkedIn webpage profile ("LinkedIn Webpage"), a Facebook account and a Twitter account.[2]

11.  In February 2014, due to mismanagement, failing business and significant debt, Hyperheal requested and Samer Saiedy, M.D. agreed to provide a cash infusion to keep Hyperheal afloat. As a result, Dr. Saiedy become a minority owner in Hyperheal and Shapiro's ownership percentage in Hyperheal was reduced to 31%.

12.  After Dr. Saiedy became a minority owner, an internal audit uncovered that Hyperheal, under Shapiro's management, had received significant overpayments from Medicare due to improper billing practices totaling $240,028.44. In September 2015, Dr. Saiedy, again, agreed to provide a large cash infusion, which was used, in part, to voluntarily repay the overpayments. As a result of this cash infusion, and the purchase of certain stock from other minority shareholders, Dr. Saiedy obtained ownership of 97.62% of Hyperheal. Shapiro retained a small, minority ownership in Hyperheal totaling 2.38%. Shapiro was also retained as an HBOT Technician.

13.  Subsequently, Hyperheal again learned it was under federal investigation for additional, Hyperheal but distinct, improper billing practices. As a result of this investigation, in March 2018, agreed to and began repaying $278,579.85.

**B.   Shapiro's Relevant Employment Agreement With Hyperheal And Related Transfer Of Intellectual Property**

---

[2] *See* https://www.linkedin.com/company/hyperheal-hyperbarics-inc-/; https://www.facebook.com/HyperHealHyperbarics/

14. On March 6, 2017, Hyperheal and Shapiro entered into an employment agreement for him to provide services as an HBOT Technician ("Employment Agreement"). A true and accurate copy is attached as **Exhibit 3**.

15. Pursuant to Shapiro's Employment Agreement, in exchange for Hyperheal employing him, Shapiro expressly agreed to, among other things, relinquish and transfer all ownership in and control over a wide-variety of Hyperheal intellectual property:

> In consideration of HH employing you on the terms set forth above:
>
> - You agree that you will not engage in any marketing on behalf of HH without the express permission of the COO or his delegate.
>
> - You will not participate on social media on behalf of HH, including but not limited to, email Twitter, LinkedIn or Facebook. These social media sites will need to be turned over to the COO, IT Director and or marketing department **prior** to the start of the job. (emphasis in original)
>
> - <u>You hereby relinquish and transfer to HH any and all ownership or other rights</u>, if any, that you have in any intellectual properly (including without limitation trademarks, copyrights, and patents), social media accounts (including but not limited to Facebook, LinkedIn, and Twitter accounts), websites, email accounts (including but not limited to Go Daddy email accounts)… electronic materials, or other property, tangible or intangible, that has ever been used in or with respect to the business operated by HH, regardless of whether or not title to such property is currently in the name of HH; you will immediately take such steps (by, among other[] things, providing passwords and access codes) as are necessary to provide HH with access to and complete control over all such property,… and you will not, without HH's express written consent, act as HH's representative or agent with respect to any such property or any other matter. (emphasis added)
>
> \*   \*   \*
>
> Termination by HH – Without Cure Period. Unless otherwise determined by the HH in its sole discretion, this agreement, and your employment by HH, shall automatically terminate upon any of the following to occur:
>
> \*   \*   \*
>
> d.  HH determines in its sole discretion that you have engaged in unprofessional, unethical or fraudulent conduct[.]

*Id*., at pp. 2-3.

16. Pursuant to the above-referenced portions of the Employment Agreement, on March 9, 2017, Shapiro met with Scott Hughey, Hyperheal's Director of Information Technology and completed the following transfers:

- GoDaddy.com – Shapiro transferred the username and password to the Hyperheal account to Mr. Hughey, which included control over the Hyperheal Domain Names. Mr. Hughey then added additional security protections to the account.

- LinkedIn – Shapiro transferred the username and password to the Hyperheal account to Mr. Hughey. Shapiro also removed himself as administrator of the Hyperheal account and added Mr. Hughey as the administrator.

- Facebook – Shapiro transferred the username and password to the Hyperheal account to Mr. Hughey. Shapiro also removed himself as administrator of the Hyperheal account and added Mr. Hughey as the administrator.

- Twitter– Shapiro transferred the username and password to the Hyperheal account to Mr. Hughey.

**C.     Hyperheal Terminates Shapiro**

17. Ultimately, Hyperheal determined that Shapiro was the Hyperheal employee that was responsible for the actions that lead to the federal investigation culminating in the March 2018 repayments.

18. As a result, on March 23, 2018, Hyperheal terminated Shapiro's employment with Hyperheal pursuant to paragraph "d" on page 3 of his Employment Agreement for "unprofessional, unethical or fraudulent conduct."

**B.     Shapiro's Improper Use of Hyperheal's Intellectual Property**

19. Subsequent to Shapiro's termination, he has engaged in a retaliatory campaign to improperly control numerous aspects of Hyperheal's intellectual property that he expressly relinquished any rights to and promised to transfer to Hyperheal by entering into the Employment Agreement.

    **i.**    **Shapiro is improperly attempting to trademark the name "Hyperheal Hyperbarics, Inc." with the United States Patent and Trademark Office**

20.    On May 1, 2018, Shapiro filed with the U.S. Patent and Trademark Office (the "PTO") a new application for registration of the standard character mark "HYPERHEAL HYPERBARICS, INC." ("Trademark Application"), which has been Hyperheal's legal name for the medical practice it operates for the provision of HBOT since 2012 (and in a similar form since 2007). A true and accurate copy is attached as **Exhibit 4**. Shapiro signed the application as the signatory and individual Applicant. *Id*.

21.    Shapiro lacks the legal authority to bind Hyperheal because by entering into the Employment Agreement he relinquished all ownership and other rights in any intellectual property, including all trademarks, and agreed to transfer all ownership and other rights to Hyperheal.

22.    Without any legal authority, Shapiro is not the proper party to sign any trademark application filed in connection with Hyperheal's legal name.

23.    At the time Shapiro presented the trademark registration application to the PTO for filing, he knew that he had relinquished all rights to the trademark "HYPERHEAL HYPERBARICS, INC."

24.    Shapiro knowingly and willfully falsified a material fact and knowingly and willfully made a false, fictitious or fraudulent statement or representation to the PTO regarding his legal authority in an attempt to register "HYPERHEAL HYPERBARICS, INC." solely to harass and harm Hyperheal in violation 37 C.F.R. §11.18(b).

    **ii.**    **Shapiro is improperly attempting to reassert control over the Hyperheal Domain Names**

{00372166v. (14526.00012)}    6

25. On May 1, 2018, Hyperheal received an email notice from GoDaddy.com that the Hyperheal Domain Names were being transferred to a different registrant with the email address of "eric.hyperheal@gmail.com". **Exhibit 5.** On May 2, 2018, Hyperheal received from GoDaddy.com a "Change of account confirmation" for the Hyperheal Domain Names. *Id*.

26. Upon information and belief, Shapiro contacted GoDaddy.com and falsely asserted he was the proper owner of the Hyperheal Domain Names to fraudulently induce GoDaddy.com to transfer the registration of the Hyperheal Domain Names to his account, which it appears from Exhibit 5 that GoDaddy.com completed on May 2. Notably, because Shapiro is not the proper owner of the Hyperheal Domain Names he was unable to access Hyperheal's account online without the correct username, password and security information in order to manually transfer the Hyperheal account to his own account.

27. On May 10, 2018, an attorney from undersigned counsel's law firm submitted a letter and form to GoDaddy.com, LLC requesting the Hyperheal Domain Names be immediately be transferred back to the ownership of Hyperheal. A true and accurate copy of the letter and exhibits is attached as **Exhibit 6**. To date, GoDaddy.com has not addressed Shapiro's improper actions.

28. While Shapiro was the original registrant of the Hyperheal Domain Names on behalf of Hyperheal, to the extent Shapiro had any ownership rights in the Hyperheal Domain Names he relinquished all rights in these domain names and agreed to, and did, transfer all ownership and other rights to Hyperheal by entering into the Employment Agreement. Moreover, Shapiro's attorney acknowledged, on his behalf, in an April 18, 2018, letter to Hyperheal that Shapiro, in fact, "took the necessary steps to complete transfer for the Intellectual Property to HH." *Id*.

29.     Shapiro's improper attempts to reassert control over the Hyperheal Domain Names are designed solely to harass and harm Hyperheal.

### iii.    **Shapiro is attempting to block Hyperheal's use of its LinkedIn Webpage**

30.     On May 18, 2018, Hyperheal received a notice from LinkedIn that it received a claim "alleging infringing, inaccurate, or unlawful content" on Hyperheal's LinkedIn Webpage. A true and accurate copy is attached as **Exhibit 7**.  On May 23, 2018, Hyperheal timely filed a Counter-Notice.

31.     Upon information and belief, Mr. Shapiro submitted this "claim" to LinkedIn.

32.     Because Shapiro relinquished all rights in and agreed to transfer all ownership to Hyperheal's LinkedIn Webpage to Hyperheal pursuant to the Employment Agreement, his attempt to block Hyperheal's control of the LinkedIn Webpage is improper and designed simply to harass and harm Hyperheal.

### iv.    **Hyperheal demanded Shapiro cease and desist and he refused**

33.     On May 18, 2018, Hyperheal, by undersigned counsel, demanded, via letter, that Shapiro cease and desist his improper attempts to control Hyperheal intellectual property including the Hyperheal Domain Names, LinkedIn Webpage, Facebook and Twitter accounts and withdraw the Trademark Application (collectively the "Hyperheal IP") by the close of business on May 21, 2018.  A true and accurate copy is attached as **Exhibit 8**.

34.     On May 17 and again on May 21, 2018, Shapiro's counsel responded demanding $5,000,000 and release for all of his previous conduct and insisted that he would not cease and desist his improper actions and, instead, that Shapiro will be using the "Hyperheal" name to compete directly with Hyperheal.  True and accurate copies are attached as **Exhibits 9 and 10.**

### COUNT I: BREACH OF CONTRACT
### (Specific Performance)

35. Plaintiff incorporates paragraphs 1-34 as if fully set forth herein.

36. The Employment Agreement formed a contract between Hyperheal and Shapiro under which both parties mutually assented to be bound by the agreed upon terms.

37. The Employment Agreement expressly required and Shapiro expressly promised to "relinquish and transfer to HH any and all ownership or other rights, if any, that you have in" the Hyperheal IP in exchange for Hyperheal employing Shapiro.

38. Hyperheal fulfilled its obligations under the Employment Agreement. Shapiro's failure to relinquish and transfer his ownership rights, if any, or attempts to reassert control over the Hyperheal IP after transfer is a material breach of the Employment Agreement.

39. Hyperheal has no adequate remedy at law to address Shapiro's material breach.

WHEREFORE, Plaintiff Hyperheal Hyperbarics, Inc. respectfully requests that this Court enter judgment in its favor and against defendant Eric Shapiro that the Employment Agreement be specifically enforced and that defendant Eric Shapiro be ordered to transfer ownership of the Hyperheal IP to Hyperheal, and such other relief as the Court deems proper.

**COUNT II: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

40. Plaintiff incorporates paragraphs 1-39 as if fully set forth herein.

41. By entering into the Employment Agreement, Shapiro relinquished and promised to transfer any ownership and control over the Hyperheal IP to Hyperheal.

42. In addition to the transfers of right, title and interest in the intellectual property consistent with the Employment Agreement, Shapiro continues as a shareholder in Hyperheal which is a closely held corporation which currently only has two shareholders.

43. Shapiro's improper attempts to block Hyperheal's control of the Hyperheal IP are unlawful, intentional and willful acts and violate his duties and obligations under the Employment Agreement, as a shareholder and as a matter of law.

44. Shapiro's actions are calculated to cause damage and loss to Hyperheal by interfering with its business relationships with existing clients as well as potential clients without right or justifiable cause, and actually caused such damage.

45. Shapiro's actions are calculated to cause damage and loss to Hyperheal by interfering with its business relationship with LinkedIn and GoDaddy.com.

46. As a direct and proximate cause of Shapiro's improper actions, Hyperheal has incurred actual damages and will continue to incur damages.

WHEREFORE, Plaintiff Hyperheal Hyperbarics, Inc. respectfully requests that this Court enter judgment in its favor and against defendant Eric Shapiro in an amount exceeding $75,000 in compensatory damages, punitive damages in an amount to be determined, and costs, expenses, and such other relief as the Court deems proper.

## COUNT III: UNFAIR COMPETITION-MISAPPROPRIATION OF PRODUCTS

47. Plaintiff incorporates paragraphs 1-46 as if fully set forth herein.

48. Beginning in 2012, Hyperheal has spent valuable time, labor and substantial sums of money in creating and developing the "Hyperheal" brand and related intellectual property.

49. As a result of quality work, experience and the skill of Hyperheal employees, the "Hyperheal Hyperbarics" brand has acquired a reputation of excellent quality. Hyperheal promotes its brand through the Hyperheal IP and related intellectual property to keep existing customers and solicit new customers.

50. Without the consent or approval of Hyperheal, Shapiro has wrongfully misappropriated or attempted to misappropriate the Hyperheal IP. Shapiro has also notified Hyperheal he intends to compete directly with Hyperheal using the "Hyperheal" name and is actively attempting to trademark the name "Hyperheal Hyperbarics, Inc."

51. As a result of Shapiro's misappropriating the Hyperheal IP for his own use, Hyperheal has suffered, and continues to suffer, severe economic injury including, but not limited to, lost customers, inability to operate the Hyperheal Domain Names and the inability to trademark its own name, *e.g.,* "Hyperheal Hyperbarics, Inc.," that it has been exclusively using since 2012.

WHEREFORE, Plaintiff Hyperheal Hyperbarics, Inc. respectfully requests that this Court enter judgment in its favor and against defendant Eric Shapiro in an amount exceeding $75,000 in compensatory damages, injunctive relief, punitive damages in an amount to be determined, and costs, expenses, and other such relief as this Court deems proper.

## COUNT IV: DECLARATORY RELIEF
**(Injunctive Relief – Temporary, Preliminary, and Permanent)**

52. Plaintiff incorporates paragraphs 1-51 as if fully set forth herein.

53. Pursuant to the Employment Agreement, Shapiro relinquished and promised to transfer to Hyperheal all rights in and control over any and all of Hyperheal's intellectual property including the Hyperheal IP. Hyperheal has a recognizable right in preventing Shapiro from intentionally and without justification asserting control over the Hyperheal IP. There exists a strong likelihood that Hyperheal will succeed on the merits of its claims because Shapiro has absolutely no ownership rights in the Hyperheal IP pursuant to the express terms of the Employment Agreement and, therefore, his failure to transfer and/or attempts to reassert control over and interfere with Hyperheal's control over the Hyperheal IP is a material breach of the Employment Agreement and constitutes interference with Hyperheal's business relations.

54. An actual and justiciable controversy exists between the parties, for which a declaratory judgment of the Court is needed. Antagonistic claims are present between the parties, which indicate imminent and inevitable litigation. A declaratory judgment including injunctive relief by this Court will terminate this controversy.

55. Unless Shapiro is immediately enjoined from attempting to control the Hyperheal IP and required to transfer to Hyperheal any ownership rights he retained or has recently reasserted in the Hyperheal IP, Hyperheal will suffer immediate, substantial and irreparable injury because it will be prevented from controlling its own intellectual property in furtherance of operating its business and marketing to clients. Moreover, Shapiro's counsel, by his May 21, 2018, letter has stated Shapiro intends to compete directly with Hyperheal using the "Hyperheal" name.

56. By contrast, Shapiro will suffer no harm if he is enjoined from attempting to control the Hyperheal IP. First, Shapiro previously agreed to relinquish and transfer any ownership in the Hyperheal IP in March 2017 by entering into the Employment Agreement. To the extent he retained certain ownership rights in the Hyperheal IP or to the extent he has reasserted those ownership rights, he did so in breach of the Employment Agreement as alleged above. Stated differently, if Shapiro did not breach the Employment Agreement he would have no basis to now assert any ownership rights in the Hyperheal IP. Second, Hyperheal is not attempting to prevent Shapiro from competing with Hyperheal, it is merely attempting to prevent him from using the identical name in competition. In other words, Shapiro is free to begin immediately competing with Hyperheal under any name not including "Hyperheal."

57. Accordingly, the immediate and irreparable harm to Hyperheal in denying injunctive relief greatly outweighs the non-existent harm to Shapiro if the injunctive relief is granted.

58. Finally, the public interest is best served by granting the injunctive relief to prevent individuals who do not have ownership and control over an entity's intellectual property from falsely and fraudulently asserting control solely to harass the rightful owner and gain business advantage – particularly when such actions are in material breach of a bargained for agreement.

WHEREFORE, Plaintiff Hyperheal Hyperbarics, Inc. requests that this Court issue an Order granting:

(a) That this Court determine, declare, and adjudicate the rights and liabilities of the parties with respect to the Employment Agreement and rights in the intellectual property of Hyperheal;

(b) A temporary restraining order requiring Defendant Eric Shapiro to immediately: (i) cease attempting to control the Hyperheal Domain Names, the Hyperheal LinkedIn Webpage and the Hyperheal Facebook and Twitter accounts and immediately transfer all ownership to Hyperheal; (ii) withdraw or assign to Hyperheal the Trademark Application; and (iii) cease using the name "Hyperheal" or any intellectual property associated with the name "Hyperheal;"

(c) A preliminary injunction ordering Defendant Eric Shapiro to: (i) cease attempting to control the Hyperheal Domain Names, the Hyperheal LinkedIn Webpage and the Hyperheal Facebook and Twitter accounts and immediately transfer all ownership to Hyperheal; (ii) withdraw or assign to Hyperheal the Trademark Application; and (iii) cease using the name "Hyperheal" or any intellectual property associated with the name "Hyperheal;"

(d) A permanent injunction ordering Defendant Eric Shapiro to: (i) cease attempting to control the Hyperheal Domain Names, the Hyperheal LinkedIn Webpage and the Hyperheal Facebook and Twitter accounts and immediately transfer all ownership to Hyperheal; (ii) withdraw

or assign to Hyperheal the Trademark Application; and (iii) cease using the name "Hyperheal" or any intellectual property associated with the name "Hyperheal;"

(e) Such other and further relief as this Court may deem just and proper.

### COUNT V: LANHAM ACT

59. Plaintiff incorporates paragraphs 1-58 as if fully set forth herein.

60. Subsequent to his termination of employment from Hyperheal, Shapiro embarked on a plan and scheme to interfere with Hyperheal's name, reputation and goodwill in violation of the Lanham Act, in particular, 15 USC § 1125(a).

61. On November 2, 2016, Shapiro filed a trademark application for mark "Hyperheal Hyperbarics, Inc." with the United States Patent and trademark Office ("USPTO"). A copy of his application is attached as **Exhibit 11** hereto. This application states that Shapiro has been using the mark since "at least as early as 03/07/2007" and has been using in commerce since "[a]t least as early as 05/11/2012." Attached as the specimen for the mark's use in commerce are screenshots of the website for Hyperheal.

62. This application was eventually abandoned by Shapiro by September, 2017 based on a trademark issued for "Hyperheal" registered to Dr. Tommy Love in May, 2016. Dr. Love's application for the mark made clear that his first use in commerce was "4/00/2014." Dr. Love's statements of use are attached as **Exhibit 12** hereto. As the specimen showing first use of the "Hyperheal" mark, Dr. Love attached screenshots of his website for Hyperheal$O_2$.

63. After Shapiro was terminated by Hyperheal, Shapiro approached Dr. Love and purchased Dr. Love's "Hyperheal" trademarks on May 16th. The Assignment attached hereto as **Exhibit 13**, confirming the purchase and which was filed with the USPTO explains that

> Whereas, Eric M. Shapiro (hereinafter referred to as "ASSIGNEE"), is the founder and minority shareholder in HyperHeal Hyperbarics, Inc., a corporation organized

and existing under the laws of the State of Maryland, having business offices located in 10540 York Road, Suite H, Cockeysville, MD 21030, 1811 Crain Highway, Suite C, Glen Burnie, Maryland 21061; and, 9411 Philadelphia Road, Suite F, Rosedale, Maryland 21237; is desirous of acquiring all right, title and interest in and to the Marks held by Dr. Tommy Love.

64. Prior to purchasing Dr. Love's marks, Shapiro also filed a new application for a trademark for "Hyperheal Hyperbarics, Inc." again noting its first use since "at least as early as 03/07/2007" and the use in commerce since "[a]t least as early as 05/11/2012." *See* **Exhibit 14**.

65. Subsequent to the purchase and assignment from Dr. Love, Shapiro revised his pending application with the USPTO, reaffirming his use in commerce since "[a]t least as early as 05/11/2012." *See* **Exhibit 15**.

> The first time I tried to submit this Trademark it was rejected due to it being in conflict with reg# 4969175 & 4969176. I have since purchased both of those trademarks in their entirety and goodwill, then I filed an ASSIGNMENT with a ETAS ID: TM474505 on 5/17/18 which is currently pending in your system. I am now hopeful that this current application for "HYPERHEAL HYPERBARICS, INC" with a serial # 87902701 will be approved and given a registration number, giving me full ownership of all 3 names. Thank you.

66. Shapiro and Dr. Love were aware of Hyperheal's presence in Maryland, its domain registrations and the use of the Hyperheal name by Plaintiff and Shapiro long before Dr. Love began to use the name. No objection to that continued use was ever made.

67. After Shapiro obtained these assignments, and solely intending to interfere with Hyperheal's business, goodwill and reputation, Shapiro notified GoDaddy, which was hosting Hyperheal's website (which Shapiro also used as a specimen for his initial trademark application) that Hyperheal was infringing on his newly acquired trademark. GoDaddy thereafter suspended that website.

68. Even though Shapiro was well aware of the prior use in commerce and lack of infringement, Shapiro did not tell GoDaddy that Hyperheal's domain name and continued use was actually started by him, owned by Hyperheal and was permitted by law.

69. Shapiro does not have a medical license.

70. Shapiro is not in the business of and does not engage in commerce providing hyperbaric services other than as a shareholder of Hyperheal.

71. Shapiro cannot use the name "Hyperheal Hyperbarics, Inc." in commerce for purposes unrelated to Hyperheal.

72. As a result of the continued use of Hyperheal's name and mark since "[a]t least as early as 05/11/2012," which use was acknowledged by Shapiro, Hyperheal's name and mark have developed secondary meaning and have become easily recognizable as referring to Hyperheal and its services.

73. Shapiro's unlawful efforts to interfere with and prevent the use of Hyperheal's name and mark in commerce in connection with its business and services offered to the public is a false and misleading designation of origin and a false and misleading representation of facts, which (a) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Shapiro with Hyperheal, or as to the origin, sponsorship, or approval of Shapiro's goods or commercial activities by Hyperheal; and/or (b) in commercial advertising or promotion, misrepresent the nature, characteristics, or qualities or origin of Shapiro's goods, services, or commercial activities.

74. These acts of Shapiro constitute unfair competition and an infringement of Hyperheal's rights in its above-described mark. Shapiro's acts are in violation of 15 U.S.C. § 1125(a), and Hyperheal has been and is likely to be damaged by these acts.

75.     Under the Lanham Act, Plaintiff is entitled to seek an injunction against any further misrepresentations or use of the marks of Hyperheal and disgorgement of all revenues which Shapiro has received that are attributable to the infringement of any of Hyperheal's marks and all misrepresentations Shapiro has made. In addition, because Shapiro's actions have been willful and deliberate, Hyperheal seeks recovery of its attorneys' fees.

WHEREFORE, Hyperheal requests that:

A. This Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116, enjoining Shapiro and his agents, servants, and employees from directly or indirectly using the name "Hyperheal" or any mark, word, or name similar to Hyperheal's mark which is likely to cause confusion or mistake or to deceive;

B. Shapiro be required to account to Hyperheal for any and all profits derived by Shapiro from the sale of its goods and for all damages sustained by Hyperheal by reason of the acts of infringement and unfair competition complained of herein;

C. The Court award Hyperheal treble the amount of actual damages suffered by Hyperheal, pursuant to 15 U.S.C. § 1117, or that the court award Hyperheal punitive and exemplary damages in the sum of $100,000 by reason of Shapiro's actions; and

D. Hyperheal be awarded its reasonable costs and attorney's fees and such other and further relief as it shall deem just.

## COUNT V: DECLARATORY RELEIF REGARDING TRADEMARK RIGHTS

76.     Plaintiff incorporates paragraphs 1-75 as if fully set forth herein.

77.     This court has the power to hear a declaratory judgment action under 28 U.S.C. § 2201 since it presents a justiciable case or controversy within the meaning of Article III of the Constitution.  Given Shapiro's actions with GoDaddy and seeking to take down Hyperheal's web

presence and use of the name "Hyperheal Hyperbarics, Inc." since 2012, Hyperheal has a real and reasonable apprehension of litigation and it is clear that there is a course of conduct which presents an adversarial conflict with Shapiro.

78. At this time, none of the marks claimed to be owned by Shapiro are incontestable under 15 U.S.C. § 1065, since they have not been registered and in continuous use for more than the required five years and have not complied with the criteria set out in 15 U.S.C.§ 1065(1)-(4).

79. Based on the prior use of Hyperheal, Shapiro's claims to exclusive use filed in the USPTO are invalid and unenforceable to protect the mark and serve to invalidate its registration.

80. In addition, 15 U.S.C. § 1115(b) provides clear defenses which prevent Shapiro from stopping or otherwise interfering with Hyperheal's continued use of the Hyperheal name and mark.  Among the more prominent defenses which prevent the Shapiro from stopping or interfering with Hyperheal are Shapiro's own acknowledgment that (i) Hyperheal adopted and used the mark in commerce long before Dr. Love's registration, (ii) without any knowledge of any prior use and (iii) Hyperheal has used the mark continuously from a date prior to the registration of Dr. Love's mark eventually assigned to Shapiro.

81. In addition, 15 U.S.C. § 1115(b)(8) provides Hyperheal with defenses to stop the interference by Shapiro because equitable principals, including laches, estoppel, and acquiescence, are applicable.

82. In the present case, it would be unjust and incongruent to permit Shapiro to now seek to stop, enjoin, invalidate and disclaim his own admitted previous use.

83. Only through a Court Order and ruling will the parties be permitted to avoid this controversy, permit Hyperheal to continue to protect its prior use and name and invalidate the registrations of Dr. Love now held by Shapiro.

WHEREFORE, Hyperheal requests this Court enter an Order

A. Which declares the rights of the parties hereto with respect to the ownership and use of the various trademarks;

B. Which finds that Shapiro cannot enjoin, preclude or otherwise interfere with the continued use by Hyperheal of the mark of Hyperheal Hyperbarics, Inc. in commerce;

C. Which finds that Hyperheal's prior use invalidates the marks obtained by Dr. Love; and

D. That the Court award Hyperheal attorney's fees and the costs of bringing this action and such other and further relief as may be just and required.

/s/ Donald J. Walsh_____
Stephen H. Kaufman
skaufman@wcslaw.com
Donald J. Walsh
dwalsh@wcslaw.com
Marc A. Campsen
mcampsen@wcslaw.com
Wright, Constable & Skeen, L.L.P.
7 Saint Paul Street, 18th Floor
Baltimore, Maryland 21202
Telephone: (410) 659-1300
Facsimile: (410) 659-1350

*Attorneys for Plaintiff Hyperheal Hyperbarics, Inc.*