IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HYPERHEAL HYPERBARICS, INC.,   *

   *

    Plaintiff,                                 Civil Action No. RDB-18-1679

   *

    v.

   *

ERIC SHAPIRO,

   *

    Defendant.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

On June 18, 2018, this Court entered a Temporary Restraining Order upon a motion by Plaintiff Hyperheal Hyperbarics, Inc. ("Plaintiff" or "Hyperheal") against its founder, former employee, and current minority shareholder Defendant Eric Shapiro ("Defendant" or "Shapiro"), enjoining and restraining him from pursuing a trademark application for "Hyperheal Hyperbarics, Inc.," attempting to control the name "Hyperheal," using in commerce the trademarks "Hyperheal O2" and "Hyperheal," and asserting control over various Hyperheal domain names and social media accounts. (ECF No. 19.) Subsequently, the Plaintiff filed a Motion for a Preliminary Injunction to continue to enjoin and restrain Shapiro from the same until a final judgment on the merits of this case. (ECF No. 31.) The issues are fully briefed, and this Court held hearings on August 15 and 17, 2018. (ECF Nos. 36, 39.)

After two days of hearings, a review of witness testimony, exhibits presented, the parties' submissions, and argument of counsel, it is clear to this Court that Hyperheal is

1

entitled to injunctive relief against Shapiro on Counts I-IV of the Amended Complaint, setting forth claims for breach of contract, tortious interference with business relations, unfair competition, and declaratory relief. While Shapiro has sought to cast this case as a trademark case in the context of Counts V and VI of the Amended Complaint, he faces abundant evidence of his willful breach of contract and self-dealing. Accordingly, for the following reasons, Plaintiff's Motion for a Preliminary Injunction (ECF No. 31) is GRANTED.[1]

## BACKGROUND

### I.     Factual Background

In 2012, Defendant Eric Shapiro ("Defendant" or "Shapiro") founded Plaintiff Hyperheal Hyperbarics, Inc. ("Plaintiff" or "Hyperheal") for the purpose of providing hyperbaric oxygen therapy.[2] (ECF No. 14-2.) A website was created for the company[3] and Shapiro registered various other domain names with GoDaddy.com to capture all variations of the primary website address. In addition, Shapiro created LinkedIn, Facebook, and Twitter accounts for the company. At this time, Shapiro was one of three directors and the majority owner of Hyperheal. (Am. Compl., ECF No. 14 at ¶ 8.)

In February of 2014, with the business "failing," Samer Saiedy, M.D. ("Dr. Saiedy"), owner of Maryland Vascular Specialists and Vascular and Endovascular Surgery, agreed to provide a cash infusion to Hyperheal. (ECF No. 14 at ¶ 11.) As a result, Dr. Saiedy also

---

[1] Also pending is Plaintiff's Motion to Issue a Scheduling Order relating to briefing the motion for a preliminary injunction. (ECF No. 24.) This Motion is MOOT.
[2] Hyperbaric oxygen therapy is a therapy that involves breathing pure oxygen in a pressurized room or tube and is administered as treatment for a wide variety of medical conditions. (ECF No. 14 at ¶ 6.) Five years earlier in 2007, Shapiro had formed Hyperheal Hyperbarics, LLC. (ECF No. 14-1.) In 2009, the LLC's corporate status was forfeited. (*Id.*)
[3] *See* https://hyperhealhyperbarics.com/.

became a minority owner of the business. (*Id.*) In September of 2015, Dr. Saiedy provided another large cash infusion. (*Id.*) As a result of the second cash infusion and purchase of stock from other minority shareholders, Dr. Saiedy's ownership percentage in Hyperheal increased to 97.62% and Shapiro's decreased to 2.38%. (*Id.*)

In October of 2016, Shapiro was terminated from Hyperheal.[4] He remained, however, a 2.38% shareholder in the company. The next month, on November 11, 2016, Shapiro filed a Trademark Application for the name "Hyperheal Hyperbarics, Inc." with the United States Patent and Trademark Office ("USPTO"). (ECF No. 14-11.) He filed the Trademark Application pursuant to 15 U.S.C. § 1051(a), representing that he was the owner of the trademark and using it in commerce on or in connection with hyperbaric oxygen services. (*Id.*) As a "specimen," he attached a photo of the hyperhealhyperbarics.com website and declared that the photo showed the mark being used in or connection with the hyperbaric oxygen services. (*Id.*) On the Application, he also represented that he was the "Owner" and that the mark had been used "in commerce" as early as May 11, 2012, and "anywhere" at least as early as March 7, 2007. (*Id.*) For his contact information, Shapiro listed his personal home address and cellphone, but listed the email eric@hyperheal.org. (*Id.*) Shapiro testified that he did not tell anyone at Hyperheal about this Trademark Application. (Aug. 15 Tr. 34:10-18.)

Shapiro testified that shortly after he filed his Trademark Application, he received an email indicating that the trademark "was live." (Aug. 15 Tr. 37:11-12.) Accordingly, he

---

[4] This proved to be the first of two terminations of Shapiro's association with Hyperheal. The record is unclear at this time with respect to the reason for Shapiro's first termination. At the hearing, Shapiro testified that "I was terminated because Dr. Saiedy said that nobody wanted me to come back to the company and that he would find a way to bring me back sometime in January." (Aug. 15 Tr. 33:12-14.)

"believed at the time [he] had a trademark," and began trying to use the trademark in commerce. (*Id.* at 37:11-14, 19-20.) Specifically, he testified that he approached potential investors that he found through networking sites and that potential investors approached him about using the mark. (*Id.* at 37:21-38:5.) The potential investors were in various parts of the United States including Maryland, California, Florida, and Pennsylvania. (*Id.* at 40:15-19.)

On February 10, 2017, the USPTO sent Shapiro a Notice of Office Action relating to his Trademark Application. (Def.'s Exh. 12.) The Notice stated "[r]egistration of the applied mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 4969176." (*Id.*) The Notice went on to say that No. 4969176 was a trademark for "Hyperheal" that had been previously registered by Tommy Love on May 31, 2016. (*Id.*) The Notice indicates that it was sent to Shapiro's personal home address and the eric@hyperheal.org email address, and it gave Shapiro six months to respond or the USPTO would deem the Trademark Application abandoned.[5] (*Id.*) Shapiro testified that during this time, he was living at "multiple addresses" and did not recall receiving this Notice. (Aug. 17 Tr. 154:7-10.)

One month later, on March 6, 2017, Plaintiff re-hired Shapiro as a Hyperbaric Oxygen Therapy ("HBOT") Technician. (ECF No. 14-3.) Shapiro and Hyperheal entered into an employment agreement (the "Employment Agreement" or "the Agreement") whereby Shapiro would receive a starting salary of $80,000 per year, with an increase to $100,000 per year after six months. (ECF No. 14-3.) Shapiro also still retained his 2.38% share in the company, and through the Employment Agreement agreed to the following:

---

[5] As explained below, Shapiro never responded and the USPTO sent Shapiro a letter that the Application was deemed abandoned on September 8, 2017.

> You agree that you will not engage in any marketing on behalf of [Hyperheal] without the express permission of the COO or its delegate.
>
> You will not participate on social media on behalf of [Hyperheal], including, but not limited to, email, Twitter, LinkedIn or Facebook. These social media accounts will need to be turned over to the COO, IT Director and or marketing department prior to the start of the job.
>
> You hereby relinquish and transfer to [Hyperheal] any and all ownership or other rights, if any, that you have in any intellectual property (including without limitation trademarks, copyrights, and patents), social media accounts, . . . or other property, tangible or intangible, that has ever been used in or with respect to the business operated by [Hyperheal], regardless of whether or not title to such property is currently in the name of [Hyperheal]; you will immediately take such steps (by, among other things, providing passwords and access codes) as are necessary to provide [Hyperheal] with access to and complete control over all such property; and you will, at [Hyperheal's] request, sign such documents and take such other steps as may be necessary to confirm that [Hyperheal] is the owner of all such property and accounts . . ..

(ECF No. 14-3.) Under "effect of termination," the Agreement provided that "[u]pon termination of this agreement for any reason, neither party shall have any further rights, duties or obligations under this agreement, except to carry out the provisions which contemplate performance after termination or expiration." (*Id.*) Notably, the Employment Agreement did not contain a non-compete clause.

Subsequently, Defendant Shapiro met with Scott Hughey, Director of Information Technology for Hyperheal, to execute his obligations under the Employment Agreement to relinquish and transfer any of his ownership or other rights in intellectual property, social media accounts, or other property. Shapiro testified that during this meeting, he "gave up" his rights to the domain names. (Aug. 17 Tr. 152:15-17.) Specifically, he provided Hughey with the user name and password to the GoDaddy account associated with the registered Hyperheal domain names. Shapiro also provided Hughey with the passwords for the

company's Facebook and LinkedIn pages, and Hughey removed Shapiro as an administrator on those accounts. Shapiro also provided Hughey with the password for the Twitter account.

It is undisputed that Shapiro did not mention his Trademark Application for "Hyperheal Hyperbarics, Inc." to Hughey or anyone else at Hyperheal during this meeting. Accordingly, he also did not provide or notify any Hyperheal personnel of the USPTO's Notice of Office Action indicating that the trademark "Hyperheal Hyperbarics, Inc." conflicted with a Trademark already owned by Dr. Tommy Love. Shapiro did not mention this trademark even though, as explained above, he believed that he had a valid trademark and began trying to use it in commerce. Finally, Shapiro also did not tell anyone at Hyperheal about the various investors he had spoken to in Maryland and elsewhere.

While employed by Plaintiff, Shapiro never responded to the USPTO's Notice of Office Action. Accordingly, on September 8, 2017, the USPTO issued a Notice of Abandonment for Shapiro's Trademark Application for "Hyperheal Hyperbarics, Inc." (Def.'s Exh. 12.) The Notice of Abandonment indicates that, like the Notice of Office Action, it was sent to Shapiro's personal home address and eric@hyperheal.org email address. Shapiro testified, however, that he also did not recall receiving this Notice.[6] (Aug. 17 Tr. 153:13-23.) Shapiro repeatedly testified that it was his understanding that the contents of his email were turned over to the company when he entered into his Employment Agreement. (*Id.* at 138:18-19, 22-25.) Therefore, he asserts that the company would have had access to his email and could have reviewed both USPTO Notices. Scott Hughey testified,

---

[6] Shapiro testified that he was no longer living at the listed personal home address. (Aug. 17 Tr. 153:22-23.)

however, that Shapiro and Hughey did not discuss Shapiro's eric@hyperheal.org email address during their meeting. (*Id.* at 222:12-14.) Nor did Shapiro tell Hughey or anyone else at Hyperheal that he had listed his hyperheal.org email address as a point of contact for a trademark application. Rather, Hughey testified that he assumed Shapiro would still be using the email, he did not have Shapiro's password to the email account, and accordingly he did not examine Shapiro's email. (*Id.* at 222:1-18.) Therefore, no one at Hyperheal ever received notice of Shapiro's Trademark Application, the USPTO Notice of Office Action, or the USPTO Notice of Abandonment.

A year after entering into his Employment Agreement, Shapiro was terminated in March of 2018 for "unprofessional, unethical or fraudulent conduct." The Amended Complaint asserts that Shapiro was terminated because Hyperheal determined that he was responsible for improper billing practices that resulted in a federal investigation and Hyperheal agreeing to repay $278,579.85 in March of 2018. (ECF No. 14 at ¶¶ 13, 17-18.) At the hearing, the parties agreed that this was the stated reason for his termination, although Shapiro continues to deny that he engaged in overbilling.

After his termination, Shapiro took several actions related to the "Hyperheal" name. On May 1, 2018, he filed a new Trademark Application for "Hyperheal Hyperbarics, Inc." (ECF No. 14-4.) He testified that he saw online that his previous application had been deemed abandoned and that no one currently owned the mark. (Aug. 15 Tr. 73:16-25.) For this application, he listed the email eric.hyperheal@gmail.com. (ECF No. 14-4.) Two weeks later, on May 16, 2018, Shapiro met with Dr. Love and bought the interests in the trademarks "HyperHeal" and "HyperHeal O2". (Aug. 17 Tr. 148:15-16.) He testified that he

learned of Dr. Love's marks by doing a search for "Hyperheal" on the USPTO's website. (*Id.* at 147:24-148:1.) He then contacted Dr. Love and purchased the two marks. Notably, the "Hyperheal" trademark was the mark that the USPTO determined created a likelihood of confusion with his first Trademark Application for "Hyperheal Hyperbarics, Inc."[7]

Shapiro also contacted GoDaddy.com and represented that he was the proper owner of the Hyperheal domain names that he had previously transferred and requested that they be transferred back into his account. Shapiro testified that he believed he was the proper owner because he was still paying fees for the domain names and Hyperheal had not taken over the payments since his termination. After Shapiro contacted GoDaddy, Scott Hughey received an email indicating that there was a pending transfer of the domain names out of Hyperheal's account to another account. (ECF No. 11-6.) Less than twenty-four hours later, he received another email indicating that the transfer had occurred. (*Id.*) The notification indicated that the new registrant's email was eric.hyperheal@gmail.com. (*Id.*) Hughey then filed a complaint with GoDaddy, stating that the domain names had been transferred incorrectly and requesting their return. Finally, Shapiro contacted LinkedIn and stated that Hyperheal was infringing on his trademark. Hughey testified that control of the site was almost immediately removed from Hyperheal. Shapiro also contacted Twitter and Facebook. (Aug. 17 Tr. 207:25-208:3.)

---

[7] Further, Shapiro testified that Dr. Love told him that he knew about Hyperheal Hyperbarics, Inc. when he applied for the two trademarks. (Aug. 15 Tr. 78:20-22.) After obtaining the trademarks, Dr. Love never objected to the company's use of "Hyperheal." (*Id.* at 78:25-79:2.)

## II. Procedural Background

On May 30, 2018, Plaintiff Hyperheal filed a Verified Complaint and Motion for Temporary Restraining Order in the Circuit Court for Baltimore County, Maryland. (ECF Nos. 2, 4.) That same day, the Circuit Court issued a Temporary Restraining Order: (1) enjoining and restraining Shapiro from asserting control over various Hyperheal domain names, the Hyperheal LinkedIn, Facebook, and Twitter accounts, and any other intellectual property using the name "Hyperheal"; (2) ordering him to transfer to Plaintiff any and all ownership in the same that Shapiro controlled; (3) enjoining and restraining Shapiro from pursuing his May 1, 2018 Trademark Application; and (4) enjoining and restraining him from attempting to control the name "Hyperheal." (ECF No. 5.)

On June 7, 2018, Shapiro removed the case to this Court on the basis of federal question jurisdiction under 28 U.S.C. §1331, given the Complaint's references to intellectual property and trademark law.[8] (ECF No. 1.) After this Court held a teleconference with the parties, Hyperheal filed an Amended Complaint and Supplemental Motion for Temporary Restraining Order. (ECF Nos. 14, 15.) The six-count[9] Amended Complaint asserts claims for: breach of contract (Count I), tortious interference with business relations (Count II), unfair competition- misappropriation of products (Count III), declaratory relief (Count IV), Lanham Act, 15 U.S.C. § 1501, *et seq.*, violations (Count V), and declaratory relief regarding trademark rights (Count VI). (ECF No. 14.)

---

[8] At that time, Hyperheal did not bring any causes of action against Shapiro specifically under the Lanham Act, 15 U.S.C. § 1501, *et seq.* (ECF No. 2.)

[9] The Amended Complaint improperly labels both its fifth and sixth counts as "Count V." Accordingly, this Court treats Plaintiff's sixth claim for declaratory relief regarding trademark rights as Count VI.

On June 19, 2018, this Court held a hearing on Plaintiff's Supplemental Motion for Temporary Restraining Order and for the reasons stated on the record, granted the motion. (ECF No. 19; TRO Tr., ECF No. 30.) The Temporary Restraining Order issued by this Court ordered that Shapiro was enjoined and restrained, until further Order of this Court after a preliminary injunction hearing, from:

    A. Asserting control over the Hyperheal domain names Hyperhealbarics.com, [various other domain names], any other web domains containing "Hyperheal," the Hyperheal LinkedIn webpage, Facebook page, and Twitter account and any other intellectual property using the name "Hyperheal";

    B. Pursuing the "Hyperheal Hyperbarics, Inc." trademark application filed on May 1, 2018;

    C. Attempting to control the name "Hyperheal"; and

    D. Using in commerce the trademarks "Hyperheal O2" and "Hyperheal."

(ECF No. 19.) This Court also ordered Hyperheal to post a $25,000 bond. (*Id.*)

Subsequently, on August 2, 2018, Plaintiff filed the subject Motion for Preliminary Injunction. (ECF No. 31.) The proposed Preliminary Injunction seeks to continue to enjoin and restrain the Defendant Shapiro from the same activities as the Temporary Restraining Order until such time as this Court or a jury renders a final judgment on the merits of Plaintiff's claims.[10] The next day, Defendant filed a response in addition to an Answer to the Amended Complaint. (ECF Nos. 32, 33.) On August 15 and 17, 2018, this Court held hearings on Plaintiff's Motion. (ECF No. 39.)

At the hearing, Shapiro testified that—despite his actions with GoDaddy and the social media accounts following his termination—he does not claim any rights in the domain

---

[10] The proposed Preliminary Injunction Order is identical to the current Temporary Restraining Order with the exception that under Section B, the proposed Preliminary Injunction Order omits "filed on May 1, 2018."

names subject to the Temporary Restraining Order or social media accounts. (Aug. 15 Tr. 86:21-87:2.) Despite Shapiro's representations, Hughey testified that Hyperheal still does not truly have control over Hyperheal's domain names because GoDaddy requires a final judgment to fully transfer them back to the company. (Aug. 17 Tr. 208:22-25.) Therefore, Plaintiff asserts that its control over its websites remains tenuous until a final judgment in this case. Shapiro also testified that the name "Hyperheal" is important to him because he "need[s] to make a living" and "use it in commerce." (*Id.* at 155:7.) He stated that at this time he is, "for lack of a better term, crippled at being able to do what [he does.]" (*Id.* at 155:10-11.) Shapiro also admitted, however, that neither the Employment Agreement nor Hyperheal is barring him from continuing to work in the hyperbaric industry. (*Id.* at 157:13-17.)

## STANDARD OF REVIEW

As the United States Court of Appeals for the Fourth Circuit stated in *United States v. South Carolina*, 720 F.3d 518 (4th Cir. 2013), "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." 720 F.3d at 524 (quoting *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830 (1981)). In determining whether to issue a preliminary injunction, the Court must follow the test set forth by the United States Supreme Court in *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S. Ct. 365 (2008) which requires that the plaintiff show that: (1) the movant is likely to succeed on the merits; (2) the movant is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors the movant; and (4) that an injunction is in the public interest. 555 U.S. at 20, 129 S. Ct. 365. While a plaintiff need not establish a "certainty of success," he or she must make a "clear showing that he is likely to succeed at

trial." *Di Biase v. SPX Corporation*, 872 F.3d 224, 230 (4th Cir. 2017); *Int'l Brotherhood of Teamsters v. Airgas, Inc.*, 239 F. Supp. 3d 906, 912 (D. Md. 2017) ("Because a preliminary injunction is 'an extraordinary remedy,' it 'may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" (quoting *Winter*, 555 U.S. at 22, 129 S. Ct. 386)).

## ANALYSIS

Plaintiff Hyperheal Hyperbarics, Inc. seeks to enjoin and restrain the Defendant Eric Shapiro until a final judgment on the merits of this case from:

A. Asserting control over the Hyperheal domain names Hyperhealbarics.com, [various other domain names], any other web domains containing "Hyperheal," the Hyperheal LinkedIn webpage, Facebook page, and Twitter account and any other intellectual property using the name "Hyperheal";

B. Pursuing the "Hyperheal Hyperbarics, Inc." trademark application;

C. Attempting to control the name "Hyperheal"; and

D. Using in commerce the trademarks "Hyperheal O2" and "Hyperheal."

(ECF No. 31-3.) Shapiro's testimony during the hearings clearly shows that in the absence of a preliminary injunction, he will resume attempting to use and control the name "Hyperheal," including the trademarks "Hyperheal O2" and "Hyperheal". Further, absent a preliminary injunction, nothing prevents him from attempting to reassert control over the domain names or pursuing the "Hyperheal Hyperbarics, Inc." trademark. Any of these actions would result in confusion and irreparable harm to the Plaintiff. As explained below, Shapiro's main argument for why the Plaintiff is not entitled to a preliminary injunction revolves around Hyperheal's likelihood of success on its Lanham Act and declaratory relief regarding trademark rights claims (Counts V, VI). Without delving into the intricacies of those two claims on the current record, however, Plaintiff has shown that it is likely to succeed on the merits of its breach of contract, tortious interference, misappropriation of

products, and related declaratory injunctive relief claims (Counts I-IV). The balance of equities also weighs in favor of Hyperheal given the potential irreparable harm if an injunction is not issued and the fact that the injunction does not prohibit Shapiro from pursuing employment in the hyperbaric industry. Finally, Plaintiff has demonstrated that injunctive relief is in the public interest. Therefore, as discussed in more detail below, Plaintiff is entitled to a preliminary injunction.

### A. Likelihood of success on the merits

The Amended Complaint alleges the following causes of action: breach of contract (Count I), tortious interference with business relations (Count II), unfair competition-misappropriation of products (Count III), declaratory relief (Count IV), Lanham Act violations (Count V), and declaratory relief regarding trademark rights (Count VI). (ECF No. 14.) The majority of the Defendant's argument under this prong of the *Winter* analysis focuses on Plaintiff's trademark claims. In essence, Defendant argues that at most Plaintiff has a common-law trademark in "Hyperheal" in the geographical areas in which Plaintiff actually uses the mark, which Defendant argues is limited to Baltimore County and Anne Arundel County, Maryland. Therefore, Defendant argues that Shapiro has the right to use the trademarks he purchased from Dr. Love outside of those two counties. In response, the Plaintiff provided evidence challenging both the validity of Dr. Love's marks, given that Dr. Love acknowledged Hyperheal's prior use of "Hyperheal" before he applied for the trademarks, and the Defendant's assertion that the Plaintiff's use of the mark is limited to Maryland. On the latter point, Hyperheal emphasized that the company sponsored a national seminar and Shapiro himself interacted with potential investors outside of Maryland.

As explained below, this Court finds that Plaintiff has demonstrated a likelihood of success on the merits of its breach of contract, tortious interference, misappropriation of products, and related declaratory injunctive relief claims and is entitled to the preliminary injunction it seeks under the remaining *Winter* factors. Plaintiff has clearly shown that it could succeed at trial on its argument that by entering into the Employment Agreement, Shapiro forfeited his right to attempt to control the name "Hyperheal" or pursue any of the trademarks at issue. While Shapiro has emphasized trademark issues in his response, there is a likelihood of success on Counts I-IV of the Amended Complaint. Therefore, at this time this Court does not make any determinations on the likelihood of success on Plaintiff's remaining claims.

### i. Breach of contract (Count I)

To prove breach of contract under Maryland law,[11] the Plaintiff must present "evidence of a contractual obligation owed by the Defendant[] to the Plaintiff[] and a breach of that obligation by the Defendant[]." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 540 (D. Md. 2014) (citing *RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md. 638, 655, 994 A.2d 430, 440 (Md. 2010)). The Defendant does not dispute that on March 6, 2017, he entered into the Employment Agreement with Plaintiff. In exchange for his employment and beginning salary of $80,000 per year, he agreed:

> You agree that you will not engage in any marketing on behalf of [Hyperheal] without the express permission of the COO or its delegate.

---

[11] In diversity jurisdiction cases, this Court applies the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S. Ct. 1020 (1941). Maryland courts generally follow the principle of *lex loci contractus* and apply the law of the jurisdiction where the contract was made. *Key Gov't Fin., Inc. v. E3 Enterprises Inc.,* 2 F. Supp. 3d 741, 745 (D. Md. 2014) (citing *Allstate Ins. Co. v. Hart,* 327 Md. 526, 611 A.2d 100 (1992)).

You will not participate on social media on behalf of [Hyperheal], including, but not limited to, email, Twitter, LinkedIn or Facebook. These social media accounts will need to be turned over to the COO, IT Director and or marketing department prior to the state of the job.

You hereby relinquish and transfer to [Hyperheal] any and all ownership or other rights, if any, that you have in any intellectual property (including without limitation trademarks, copyrights, and patents), social media accounts, . . . or other property, tangible or intangible, that has ever been used in or with respect to the business operated by [Hyperheal], regardless of whether or not title to such property is currently in the name of [Hyperheal]; you will immediately take such steps (by, among other things, providing passwords and access codes) as are necessary to provide [Hyperheal] with access to and complete control over all such property; and you will, at [Hyperheal's] request, sign such documents and take such other steps as may be necessary to confirm that [Hyperheal] is the owner of all such property and accounts . . ..

(ECF No. 14-3.)

In evaluating Plaintiff's breach of contract claim, this Court considers the Defendant's actions both when he entered the Agreement and was employed by Hyperheal, and the actions he took after he was terminated. It is undisputed that despite his agreement to "relinquish and transfer to [Hyperheal] any and all ownership or other rights, if any, that you have in any intellectual property (including without limitation trademarks, copyrights, and patents)," Plaintiff did not transfer his "Hyperheal Hyperbarics, Inc." Trademark Application to Hyperheal. Relatedly, he did not tell anyone at Hyperheal about the Application or that the trademark was available. Shapiro's argument that by entering into the Employment Agreement, Hyperheal had access to his email and therefore the Trademark Application, is without merit. It is also undisputed that while employed by Hyperheal, Shapiro did not transfer to Hyperheal or otherwise notify the company that his Application was rejected by the USPTO because "of a likelihood of confusion" with Dr. Love's "Hyperheal" trademark. (Def.'s Exh. 12.) Turning to Shapiro's actions after he was

terminated, it is undisputed that on May 1, 2018 Shapiro filed a second Trademark Application for "Hyperheal Hyperbarics, Inc." After he filed this application, he contacted Dr. Love and purchased the trademarks "Hyperheal O2" and "Hyperheal." Further, he contacted GoDaddy and the various social media websites to reassert control over them.

The Plaintiff has shown that it is likely to succeed at trial in proving that by undertaking these actions, Shapiro breached his Employment Agreement. By attempting to reassert control over the domain names and social media websites, he breached his agreement to relinquish and control his rights with regard to the domain names and to not participate on social media on behalf of Hyperheal and to turn over such accounts. Further, it is undisputed that at the time he entered the Employment Agreement, Shapiro had applied for, and in fact thought he was the owner of, the trademark for "Hyperheal Hyperbarics, Inc." Yet, he did not take any steps to transfer or relinquish any rights he actually possessed in the trademark. As to the Dr. Love trademarks, Defendant argues that because he did not own the "Hyperheal" and "Hyperheal O2" trademarks at the time he entered into the Agreement, he did not have any rights in those marks to relinquish or transfer. However, it is undisputed that Shapiro knew that the phrase "Hyperheal" was being used in commerce as early as May 11, 2012, when he founded the company, and "anywhere" at least as early as March 7, 2007, when he initially founded the LLC, as he represented on his first Trademark Application. (ECF No. 14-11.) Accordingly, Plaintiff has shown that it is likely to succeed on the merits that Defendant breached, and in the absence of the proposed Preliminary Injunction would continue to breach, the Employment Agreement.

### ii. Tortious interference with business relations (Count II)

To prevail on a tortious interference with business relations claim, a plaintiff must show: "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiff; (3) done to cause damage and loss, without right or justifiable cause on the part of the defendant[] (which constitutes malice); and (4) damage resulting." *Press v. United States*, No. JKB-17-1667, 2018 WL 1211537, at *8 (D. Md. Mar. 8, 2018) (citing *Kwang Dong Pharm. Co. v. Han.*, 205 F. Supp. 2d 489, 496 (D. Md. 2002)) (applying Maryland law). Plaintiff asserts that as a result of entering into the Employment Agreement and his status as a shareholder, Shapiro's attempts to prohibit Hyperheal from controlling its intellectual property are unlawful and intentional acts interfering with Hyperheal's business relationships with existing and potential clients, including LinkedIn and GoDaddy.com. (ECF No. 14 at ¶¶ 43-45.)

As explained above, Plaintiff has shown a likelihood of success of proving at trial that Shapiro violated his Employment Agreement by taking multiple steps related to Hyperheal both when he entered into his Employment Agreement and was employed at Hyperheal and after he was terminated. This includes not transferring his "Hyperheal Hyperbarics, Inc." Trademark Application to Hyperheal or notifying anyone of his Application and the subsequent USPTO Notices, filing a second Trademark Application for "Hyperheal Hyperbarics, Inc." after he was terminated, and contacting GoDaddy and the various social media websites to reassert control over the domain names and websites that he had previously transferred during his meeting with Scott Hughey. Shapiro took these actions with the intent to market himself to investors looking to set up hyperbaric treatment centers throughout the country, including Maryland, and he therefore acted with the tortious intent

to harm Hyperheal financially. *See Press*, 2018 WL 1211537, at *8 ("Here, [p]laintiff alleges that the [defendants] acted with tortious intent to harm [p]laintiff financially, and that they acted without authorization when they posted the [i]ncident [r]eport and [a]ddendum. Those are sufficient allegations to support a claim for tortious interference with business relations.") Accordingly, Plaintiff has shown that it is likely to succeed on the merits of its claim that Defendant committed tortious interference with Hyperheal's business relations.

### iii.    Unfair competition – misappropriation of products (Count III)

To prevail on a misappropriation cause of action, a "species of unfair competition under Maryland common law," a plaintiff must show: (1) "time, labor, and money . . . in the creation of the product misappropriated"; (2) "a competitive relationship [existed] between the plaintiff and the defendant"; and (3) "commercial damage to the plaintiff." *Agora Fin., LLC v. Samler*, 725 F. Supp. 2d 491, 496 n. 3 (D. Md. 2010) (citing *GAI Augio of N.Y., Inc. v. Columbia Broadcasting Sys., Inc.*, 27 Md. App. 172, 189-90 (1975)). Plaintiff asserts that since 2012, the company has successfully spent time, labor, and money creating and developing the "Hyperheal" brand and related intellectual property. The Plaintiff further asserts that Shapiro, without the consent or approval of the Plaintiff, has wrongfully misappropriated or attempted to wrongfully misappropriate the company's intellectual property for his own use in competition with the Plaintiff. As a result, Hyperheal has suffered and continues to suffer commercial damage including the inability to control its domain names and the name "Hyperheal Hyperbarics, Inc." (ECF No. 14 at ¶¶ 48-51.)

Defendant himself acknowledged on his first Trademark Application that the name "Hyperheal Hyperbarics, Inc." had been used "in commerce" as early as May 11, 2012, and

"anywhere" at least as early as March 7, 2007. (ECF No. 14-11.) During the hearing, he also clearly acknowledged the significance that the "Hyperheal Hyperbarics, Inc." name has in the hyperbaric industry, given that he testified that he purchased Dr. Love's trademarks "Hyperheal" and "Hyperheal O2" so that he could "market himself" and "use them so that [he] could then enter into conversations and use them in commerce and make money." (Aug. 17 Tr. 148:18-20.) Shapiro took these actions both before and after his termination, interfering with Hyperheal's ability to control its name "Hyperheal," its domain names, and its social media accounts, and causing damage to the company in addition to irreparable harm if an injunction is not issued. Therefore, Plaintiff has shown that it is likely to succeed on the merits that Defendant committed misappropriation of products.

### iv.  Declaratory relief (Count IV)

Count IV of the Amended Complaint seeks temporary, preliminary, and permanent injunctive relief ordering Shapiro to cease attempting to control the domain names and social media accounts, withdraw or assign to Hyperheal his Trademark Application, and cease using the name "Hyperheal" or intellectual property associated with the name "Hyperheal." As this Court is granting the Plaintiff's Motion for a Preliminary Injunction, the pertinent inquiry is whether the Plaintiff has shown a clear likelihood of success on obtaining permanent injunctive relief. "The standard for a permanent injunction is 'essentially the same' as for a preliminary injunction, 'with the exception that the plaintiff must show . . . actual success [on the merits]' when seeking a permanent injunction." *Young v. Ditech Financial, LLC*, No. PX-16-3986, 2017 WL 3066198, at *8 (D. Md. 2017) (quoting *Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987)).  For the reasons

explained above, Plaintiff has shown a clear likelihood of success on its claims for breach of contract, tortious interference with business relations, and misappropriation of products. As explained below, the Plaintiff has also satisfied the remaining irreparable harm, balance of equities, and public interest factors of the *Winter* analysis. Therefore, as to this declaratory relief claim (Count IV),[12] Plaintiff has shown a likelihood of success on the merits of its claim for a permanent injunction.

## B. Irreparable harm

This factor of the *Winter* analysis considers whether the Plaintiff has demonstrated that it is likely to suffer irreparable harm without a preliminary injunction. As the Fourth Circuit stated in *Di Biase v. SPX Corporation*, 872 F.3d 224 (4th Cir. 2017), "a plaintiff must demonstrate more than just a 'possibility' of irreparable harm." 872 F.3d at 230. Further, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937 (1974).

Plaintiff argues that it will suffer irreparable harm in the absence of the proposed Preliminary Injunction because it will be prevented from controlling its own intellectual property in furtherance of operating its business and Shapiro will attempt to use the name to compete directly with Hyperheal. On the other hand, Defendant Shapiro argues that Plaintiff will not suffer irreparable harm because—since this Court's entering of the Temporary Restraining Order—he no longer seeks to control the relevant domain names and he has

---

[12] Plaintiff has pled a separate declaratory relief claim related to trademark rights (Count VI) that this analysis does not address.

abandoned his application for "Hyperheal Hyperbarics, Inc." Therefore, he asserts that any injuries to Plaintiff up to this date can be calculated in monetary damages.

Scott Hughey testified, however, that GoDaddy will not transfer the domain names back to the Plaintiff until a final judgment is rendered in this case. (Aug. 17 Tr. 208:22-25.) Accordingly, he testified that Plaintiff currently does not truly have control over the domain names. (*Id.* at 208:22.) With respect to Defendant's assertion that he has abandoned his trademark application, this argument is undermined by the very fact that this application is Shapiro's second for "Hyperheal Hyperbarics, Inc."[13] Accordingly, at this time there is nothing preventing Shapiro from attempting to reassert control over the domain names or filing an additional trademark application.

Further, with respect to the restrictions concerning the name "Hyperheal" generally and the "Hyperheal" and "Hyperheal O2" trademarks, the USPTO itself declared that there is a likelihood of confusion between "Hyperheal Hyperbarics, Inc." and Dr. Love's trademark for "Hyperheal." (Def.'s Exh. 12.) Therefore, notwithstanding an analysis of the technical trademark issues in this case, permitting Shapiro to use these trademarks in violation of his Employment Agreement would result in a likelihood of confusion and irreparable harm to the Plaintiff. *See Rainbow School, Inc. v. Rainbow Early Education Holding LLC*, 887 F.3d 610, 619 (4th Cir. 2018) (noting Fourth Circuit precedent that the irreparable harm component of trademark infringement cases flows from an established likelihood of confusion and mark dilution (citing *Scotts Co. v. United Indus.*, 315 F.3d 264, 273 (4th Cir.

---

[13] The USPTO Notice of Abandonment recognizes Shapiro's right to reserve rights and claims with regard to the Trademark: "[T]he applicant hereby expressly abandons the application for trademark registration made under the serial number identified above. . . [T]he fact that an application has been expressly abandoned shall not, in any proceeding in the United States Patent and Trademark Office, affect any right that the applicant may have in the mark which is the subject of the abandoned application." (Def.'s Exh. 9.)

2002))). For these reasons, the Plaintiff is likely to suffer irreparable harm without a preliminary injunction.

## C. Balance of equities

Plaintiff argues that while it will suffer immediate, substantial and irreparable harm without the preliminary injunction, Shapiro will suffer no harm by having to abide by the terms of the proposed Preliminary Injunction. Plaintiff asserts that this is because Shapiro agreed to relinquish and transfer any right in Hyperheal intellectual property when he entered into the Employment Agreement, and the proposed Preliminary Injunction does not prevent him from competing with Hyperheal. Rather, it prohibits him from using Hyperheal's own intellectual property in the name "Hyperheal." On the other hand, Defendant Shapiro argues that the balance of equities weighs against the proposed Preliminary Injunction because it prevents "his ability to work in a heavily regulated national industry" and he would be "functionally unable to advertise himself to any industry investor who wants to work quickly to find staff and enter the market." (ECF No. 33 at 12, 14.) Defendant asserts that "[b]y contrast, Plaintiff has no reasonable expectation of intellectual property rights outside Baltimore County and Anne Arundel County." (*Id.* at 12.)

The proposed Preliminary Injunction does not prohibit Shapiro from working in the hyperbaric industry in Maryland or throughout the United States. Rather, it merely prohibits him from using the same name as Hyperheal in an identical industry in order to prevent him from creating confusion and irreparable harm until there is a trial on the merits on Plaintiff's claims. With respect to Defendant's intellectual property argument, it depends on the trademark issues in this case. He asserts that he acquired valid trademarks from Dr. Love,

and Plaintiff may "interfere in that bargain only to the extent permitted by law," referring to Plaintiff's exclusive rights to use "Hyperheal Hyperbarics, Inc." only in the two Maryland counties. (*Id.* at 12, 13.) As explained above, the validity of Defendant's argument given the evidence thus far that Plaintiff uses its name throughout Maryland and in other states remains questionable. More importantly, this case involves more than a trademark dispute. Given the potential irreparable harm to the Plaintiff if Shapiro is permitted to continue to use "Hyperheal," which the USPTO has already indicated has a likelihood of confusion with "Hyperheal Hyperbarics, Inc." and that Shapiro is not being prohibited from working in the hyperbaric industry in general, the balance of equities weighs in Plaintiff's favor.

### D. Public interest

The final *Winter* factor requires that the Plaintiff show that the injunctive relief is in the public interest. *Winter*, 555 U.S. at 20. The Plaintiff asserts that the public interest is best served by preventing individuals from "falsely and fraudulently asserting control [over intellectual property] solely to harass the rightful owner and gain business advantage – particularly when such actions are in material breach of a bargained for agreement." (ECF No. 14 at ¶ 58.) The public interest is served by ensuring that legitimate contracts are enforced. *Asheboro Paper and Packaging, Inc. v. Dickinson*, 599 F. Supp. 2d 664, 678 (M.D.N.C. 2009) (citation omitted); *RLI Insurance Co. v. Nexus Services, Inc.*, No. 5:18-CV-00066, 2018 WL 3244413, at *11 (W.D. Va. July 2, 2018) (collecting cases). There are also public interests in preventing a prior employee from tortuously interfering with business relations and misappropriating products. These interests, coupled with the fact that the Defendant cannot claim that his freedom to pursue employment in the hyperbaric industry is being restricted,

demonstrates that injunctive relief is in the public interest and Plaintiff has satisfied this prong of the *Winter* analysis.

Therefore, Plaintiff Hyperheal Hyperbarics, Inc. has shown a likelihood of success on the merits with respect to its claims for breach of contract (Count I), tortious interference with business relations (Count II), misappropriation of products (Count III), and declaratory relief (Count IV). The merits of Plaintiff's Lanham Act and declaratory relief regarding trademark rights claims (Counts V, VI) will await final judgment in this case. Plaintiff has also shown that it will suffer irreparable injury in the absence of preliminary injunctive relief, the balance of equities favors Plaintiff, and injunctive relief is in the public interest. Accordingly, Plaintiff's Motion for a Preliminary Injunction (ECF No. 31) is GRANTED.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for a Preliminary Injunction (ECF No. 31) is GRANTED.

A separate order follows.

Dated: September 6, 2018                                    _____/s/_____

                                                           Richard D. Bennett
                                                           United States District Judge